The Honorable Michael G. Ellis Chairperson Senate Committee on Organization 210 South, State Capitol Madison, Wisconsin 53702
Dear Senator Ellis:
The Senate Committee on Organization asks whether state or local law enforcement officials may conduct drug testing of locomotive engineers who are involved in grade crossing accidents in Wisconsin. This question requires an analysis of three issues:
(1) Whether state or local authorities may adopt regulations that would specifically confer authority on law enforcement officials to conduct drug testing of locomotive engineers who are involved in grade crossing accidents in Wisconsin.
(2) Whether state or local law enforcement officials may enforce the state's drug testing provisions embodied in the federal legislation governing railroad safety.
(3) Whether state or local law enforcement officials may conduct drug testing of locomotive engineers under their authority to enforce the state's general criminal law imposing sanctions for reckless or negligent conduct.
It is my opinion that the Federal Railroad Safety Act of 1970 has explicitly preempted the field of rail safety and not conferred authority on state or local law enforcement officials to conduct drug tests of locomotive engineers involved in grade crossing accidents. It is *Page 79 
further my opinion that the Federal Railroad Safety Act did not intend to preempt the state's enforcement of its general criminal laws imposing sanctions for reckless or negligent conduct. Thus, state or local law enforcement officials enforcing the general criminal statutes may conduct drug tests of locomotive engineers provided that the testing comports with the strictures of the fourth amendment. I will address each of these issues in turn.
 1. May state or local authorities adopt regulations that would specifically confer authority on law enforcement officials to conduct drug testing of locomotive engineers who are involved in grade crossing accidents in Wisconsin?
In 1970, the United States Congress enacted the Federal Railroad Safety Act, 45 U.S.C.A. § 421 et seq. (West 1986), which authorized the United States Secretary of Transportation (hereafter "Secretary") to adopt railroad safety regulations. Congress included in the act broad preemption provisions under the Supremacy Clause of the United States Constitution article VI, clause 2, excluding the states from legislating in any area of railroad safety addressed by the Secretary. 45 U.S.C.A. § 434 (West 1986) provides:
 The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce. *Page 80 
The federal courts have interpreted these statutory provisions to evince a "total preemptive intent." Nat. Ass'n of RegulatoryUtil. Com'rs v. Coleman, 542 F.2d 11, 13 (3d Cir. 1976).
The conclusion that the Federal Railroad Safety Act was intended to preempt the field of rail safety is confirmed by an examination of the act's legislative history. The House Committee on Interstate and Foreign Commerce, to which the bill was referred, concluded that the safety of the nation's railroads would not be advanced by subjecting the national rail system to conflicting requirements and varied enforcement in fifty different jurisdictions. H.R. Rep. No. 1194, 91st Cong., 2d Sess. (1970), reprinted in 1970 U.S.C.C.A.N. 4104, 4109. Thus, the committee clearly stated that once the United States Department of Transportation (hereafter "Department of Transportation") had prescribed a uniform, national standard, the states would no longer have authority to establish statewide regulations with respect to rail safety. Id. at 4116-17.
That federal government preemption of state or local regulation in the field of rail safety extends to post-accident drug testing is further evidenced by the Department of Transportation's regulations for the "Control of Alcohol and Drug Use" in railroad operations found at 49 C.F.R. Pt. 219 (1992). Pursuant to the rulemaking authority delegated in the Federal Railroad Safety Act, the Department of Transportation promulgated regulations designating the circumstances that permit, or require, drug testing. It is well-settled that a federal agency acting within the scope of its congressionally delegated authority may preempt state regulation. Louisiana Public ServiceCom'n v. F.C.C., 476 U.S. 355, 369 (1986). Regulations adopted within the scope of such delegated authority have the same preemptive effect as the statute itself. Fidelity Federal Sav. Loan Ass'n v. de la Cuesta, 458 U.S. 141 (1982).49 C.F.R. § 219.201 (b) (1992) explicitly addresses the administration of drug tests following accidents at grade crossings. It therefore precludes states from establishing standards with respect to drug testing in these circumstances, as *Page 81 
uniform national standards have already been prescribed under federal law. See CSX Transp. Inc. v. Easterwood, ___ U.S. ___, 113 S.Ct. 1732
(1993).
In addition, the Department of Transportation's regulations, like the authorizing legislation found in the Federal Railroad Safety Act, contain an explicit preemption provision:
Preemptive effect.
 (a) Under section 205 of the Federal Railroad Safety Act of 1970 (45 U.S.C. § 434), issuance of these regulations preempts any State law, rule, regulation, order or standard covering the same subject matter, except a provision directed at a local hazard that is consistent with this part and that does not impose an undue burden on interstate commerce.
49 C.F.R. § 219.13 (1992).
Invocation of the "local hazard" exception would not provide a permissible basis for state or local regulation of drug testing in the railroad industry. As Congress has announced, the "local hazard" savings clause is not intended "`to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter.'" Coleman, 542 F.2d at 14. Rather, "[t]he exception was designed instead to enable the states to respond to local situations which are not statewide in character and not capable of being adequately encompassed within uniform national standards." Id. at 14-15. See H.R. Rep. No. 1194, reprinted in 1970 U.S.C.C.A.N. at 4116-17. Post-accident drug testing does not fall within the ambit of a local situation that is not capable of being addressed by national standards because it is of statewide concern.
Because federal legislation has occupied the field of rail safety, including the drug testing of locomotive engineers who are involved in grade crossing accidents, it is my opinion that state and local officials may not adopt specific regulations that confer authority on state or local law enforcement officials to conduct such tests. *Page 82 
 2. May state or local law enforcement officials enforce the drug testing provisions embodied in the federal legislation governing railroad safety?
Although the Secretary possesses "the exclusive authority to assess and compromise penalties" for violations of the Federal Railroad Safety Act, the act contemplates a limited state role in enforcement of its regulations. 45 U.S.C.A. § 435 (West 1986 Supp. 1993). A state may participate in "investigation and surveillance" in connection with the rules or standards prescribed by the Secretary provided that the certification provisions contained in the statute are satisfied. 45 U.S.C.A. § 435. It is the Secretary, however, who is expressly authorized to delegate to qualified persons the functions of examining, inspecting and testing. 45 U.S.C.A. § 437 (a) (West Supp. 1993).
The regulations promulgated by the Secretary do not provide a role for the states or local authorities in drug testing of locomotive engineers. Throughout the administrative rules regarding the control of alcohol and drug use among railroad employes, only the railroads are explicitly given authority to order drug tests. See 49 C.F.R. Pt. 219. Thus, state and local law enforcement authorities lack the authority to order testing pursuant to the Federal Railroad Safety Act.
 3. May state or local law enforcement officials, acting under their authority to enforce state criminal statutes, conduct drug testing of locomotive engineers?
While the Federal Railroad Safety Act was intended to preempt regulation in the field of rail safety, the regulations and the legislative history of the act evince no intent to preempt state criminal law imposing sanctions for reckless or negligent conduct.
49 C.F.R. § 219.13 (b) (1992) provides:
 FRA does not intend by issuance of these regulations to preempt provisions of State criminal law that impose sanctions for reckless conduct that leads to actual loss of life, injury or damage to property, whether such provisions *Page 83 
apply specifically to railroad employees or generally to the public at large.
Under the applicable standard governing preemption, state law is preempted only when it is an obstacle in the accomplishment and execution of the full purposes and objectives of federal law.CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 78-79
(1987). 49 C.F.R. § 219.13 (b) is evidence that enforcement of state criminal law directed toward sanctions for reckless or negligent conduct is not an obstacle in accomplishing and executing the full purposes and objectives of the Railroad Safety Act.
Two fundamental tenets of preemption doctrine further support this conclusion. There is a strong presumption of validity when a state exercises its legitimate police powers. Huron PortlandCement Co. v. City of Detroit, Mich., 362 U.S. 440, 442 (1960). Moreover, when preemption is found, state law is invalid only to the extent of the preempted field's natural boundaries. People ofState of Ill. v. Kerr-McGee Chem. Corp., 677 F.2d 571, 578-79. As evidenced by 49 C.F.R. § 219.13 (b), the boundary of railroad safety does not necessarily extend to enforcement of criminal penalties for reckless or negligent conduct. If law enforcement officers establish probable cause that these criminal statutes may have been violated, they may pursue the violation as they would with any other citizen. Locomotive engineers are not exempt from the state's criminal laws.
Pursuant to their authority to enforce general statutes criminalizing reckless or negligent conduct, law enforcement officers may require locomotive engineers to submit to drug tests following accidents at grade crossings. The intent of their search, however, must be to enforce these criminal statutes rather than railroad safety laws. As with any other drug test they administer, these searches must also comport with thefourth amendment's prohibition against unreasonable searches and seizures. While special safety needs may give the Federal Railroad Administration authority to require some routine drug testing *Page 84 
without a warrant or probable cause, Skinner v. RailwayLabor Executives' Ass'n, 489 U.S. 602, 624 (1989), local law enforcement may only test pursuant to probable cause of a violation of a criminal statute.
In summary, I conclude that state or local law enforcement officials do not have the authority to enforce federal statutes governing testing incident to railroad accidents. Additionally, state or local governments cannot confer such authority on law enforcement officials to conduct drug tests, as this field has been explicitly preempted by federal legislation. However, I also conclude that state or local law enforcement officials would not be prohibited by the Federal Railroad Safety Act from prescribing drug tests under their authority to enforce the state's general criminal statutes.
Sincerely,
 James E. Doyle Attorney General *Page 85